UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RHODE ISLAND LATINO ARTS, NATIONAL QUEER THEATER, THE THEATER OFFENSIVE, and THEATRE COMMUNICATIONS GROUP,<br><br>*Plaintiffs*,<br><br>v.<br><br>NATIONAL ENDOWMENT FOR THE ARTS, and MARY ANNE CARTER, in her official capacity as Acting Chair of the National Endowment for the Arts,<br><br>*Defendants*. | Case No. |

### DECLARATION OF MARTA V. MARTÍNEZ

I, Marta V. Martínez, declare as follows:

1. My name is Marta V. Martínez. I am the Executive Director and Founder of Rhode Island Latino Arts ("RILA"). The facts set forth in this declaration are based on my personal knowledge.

2. Founded in 1988 as the Hispanic Heritage Committee, RILA is the leading Latino arts nonprofit organization in Rhode Island. Its mission is to promote, encourage, and preserve the art, history, heritage, and cultures of Latinos in Rhode Island.

3. RILA offers programming of every genre of art, including visual art, dance, and music. It puts on theatrical and musical performances, Latin percussion/drumming sessions, dancing events, script readings, and storytelling events. RILA also has a gallery to showcase artwork, and operates literacy programs.

1

4. RILA has previously received funding from the National Endowment for the Arts ("NEA").

5. In 2019, RILA received an NEA grant to support a youth bilingual performing arts program. Guest artists taught theater, dance, and Latin percussion/drumming workshops, and the program culminated in a public performance.

6. In 2020, RILA received an NEA grant to support operational costs in response to the COVID-19 pandemic.

7. In 2022, RILA received an NEA grant to support a performance tour through Latino neighborhoods.

8. RILA is in the process of applying for funding from the NEA's Grants for Arts Projects in the March 2025 cycle to support programming in 2026.

9. The NEA's Grants for Arts Projects application has two parts. Part 1 is submitted through Grants.gov and collects basic information about an organization. For the upcoming application cycle, Part 1 is due March 11, 2025. Part 2 of the application is submitted through the NEA's applicant portal, and requires information about the organization, its history and budget, and information about the project. Part 2 is due March 24, 2025. We can submit only one application per calendar year.

10. In order to submit Parts 1 and 2 of the application, we must submit a certification that we agree to an Assurance of Compliance. For the March 2025 cycle, NEA amended the Assurance of Compliance to include a new requirement, which states that "[t]he applicant understands that federal funds shall not be used to promote gender ideology, pursuant to Executive Order No. 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government."

11. The new Assurance of Compliance also states that the NEA "may conduct a review of your organization to ensure that the applicant is in compliance with these statutes, regulations, and executive orders. If the NEA determines that a recipient has failed to comply with any of these statutes, regulations, or executive orders, it may suspend or terminate the award, and/or recover the funds. The applicant's assurance of compliance is subject to judicial enforcement."

12. RILA originally planned to apply for funding in the March 2025 cycle to support a production of "Faust," in which the lead character is gay and queer. One actor who we were considering to cast for that role is nonbinary and uses they/them pronouns. RILA is committed to affording them the artistic freedom to interpret the role as they choose. In the past, this actor has chosen to dress as a man during one performance and dress as a woman in the next performance, while performing the same role.

13. RILA also considered applying for an NEA grant in the March 2025 cycle to support its storytelling program. The storytelling program allows performing artists to tell their stories without restrictions, and they feel comfortable working with us because we give them the artistic freedom to say what they want. In the past, a storyteller told a story about their son coming out as queer. We intend to continue to keep this program open to all performers and allow others to speak about or interpret their art based on their personal lives on stage, including nonbinary and transgender performers, and we want them to feel free to affirm their identities in their performances as part of their expressive work. We will not tell our artists to stay away from topics that could be interpreted as "promoting" what the government deems as "gender ideology."

14. RILA decided not to apply for a grant to support "Faust" or the storytelling program because of NEA's new Assurance of Compliance, specifically the requirement that "[t]he applicant understands that federal funds shall not be used to promote gender ideology, pursuant to Executive

Order No. 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government." In the absence of judicial relief invalidating the "gender ideology" requirement, RILA is concerned that applying for funding to support "Faust" or its storytelling program might run afoul of this requirement and the certification we are required to make to apply for funding.

15. In the absence of judicial relief, RILA will apply for an NEA grant to support performance tours and an oral history performance highlighting the contributions of Latinos to American history and Rhode Island history. But were the "gender ideology" requirement invalidated, we would apply for a grant that would affirmatively include celebrating transgender, queer, and nonbinary identity and featuring artists with those identities.

16. The prohibition on "promoting" what the government deems to be "gender ideology" requires us to guess as to what we can apply for and what we can feature in any NEA-funded programming. The requirement forces us to guess as to the parameters of what constitutes "gender ideology," and what constitutes the "promotion" of "gender ideology." Is it prohibited to allow a transgender, queer, or nonbinary individual to participate in NEA-funded programming? To include any mention of these identities? To include any fictional characters who are trans, nonbinary, or queer? Indeed, I fear that even describing RILA as an organization that supports transgender, nonbinary, and queer artists might run afoul of the "gender ideology" restriction.

17. The "gender ideology" requirement's vagueness also forces us to guess as to what constraints we must place on our arts programming. As a result, it denies us the ability to provide our artists the creative freedom to which we are committed as an organization, and it precludes us from expressing viewpoints affirming all identities, including those of trans, nonbinary, and queer individuals, even though we are committed to those views as an artistic organization.

18. If it were not for the "gender ideology" requirement, the scope of the project for which we would apply for NEA funding would be different. As we have done in the past, we would like to support artists who are transgender, queer, or nonbinary, and art that features trans, queer and nonbinary characters and themes. If we obtain judicial relief before March 24, 2025, the date when the substantive portion of the application is due, we will make clear that our project will do just that. Absent such relief, however, we will be compelled to apply for a more restricted program in order to avoid any programming that might violate the vague "gender ideology" prohibition.

19. We submitted Part 1 of our application on February 14, 2025, with the intention of proceeding not with our ideal project, but with a more restricted project to avoid violating the "gender ideology" requirement. But we would like to apply for a broader project, affirming transgender, nonbinary, and queer identities, and believe it is our right to do so. If the court were to enjoin the "gender ideology" requirement, we will expand the scope of the project in Part 2 of our application to reflect our intention to support trans, queer, and nonbinary artists, characters, and themes within the scope of the NEA-funded programming.

20. We believe that we have the right, as artists, to apply for NEA funding to promote art that meets the artistic merit requirements set out by Congress, whether or not it "promotes" what the government deems to be "gender ideology." We seek to affirm all gender identities, including transgender, nonbinary, and queer identities. Yet any work that might be seen as promoting these identities risks violating the NEA restriction on using federal funding to "promote" what the government deems to be "gender ideology." We therefore seek judicial relief declaring this requirement invalid, and freeing us to submit an application that is not restricted by the need to comply with the "gender ideology" requirement.

21. Being denied NEA funding will undermine our ability to fulfill our mission to promote Latino arts and cultural history.

22. As we have in the past, we also intend to apply for NEA grants in future grant cycles to support works of artistic merit that meet all the NEA's statutory requirements, and that affirm transgender, nonbinary, and queer identities through that art. But as long as the NEA requires that no funds can be used to support what the government deems to be "gender ideology," we are barred from seeking such support.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March __5__, 2025.

_____
Marta V. Martínez