UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RHODE ISLAND LATINO ARTS, NATIONAL QUEER THEATER, THE THEATER OFFENSIVE, and THEATRE COMMUNICATIONS GROUP,<br><br>*Plaintiffs*,<br><br>v.<br><br>NATIONAL ENDOWMENT FOR THE ARTS, and MARY ANNE CARTER, in her official capacity as Acting Chair of the National Endowment for the Arts,<br><br>*Defendants*. | Case No. |

## DECLARATION OF ADAM ODSESS-RUBIN

I, Adam Odsess-Rubin, declare as follows:

1. My name is Adam Odsess-Rubin. I am the Founding Artistic Director of National Queer Theater ("NQT"). The facts set forth in this declaration are based on my personal knowledge.

2. NQT is a theater collective dedicated to celebrating the brilliance of generations of LGBTQ+ artists and providing a home for unheard storytellers and activists. Through our art and free community programs, we create and organize together, working towards a more equitable vision of the world and celebrating the diversity of the American public, and in particular the most marginalized people in the queer community, including trans people, immigrants, and people of color.

1

3. NQT was awarded NEA grants in 2023 and 2024 for its Criminal Queerness Festival ("CQF"). In addition, NQT was offered an NEA grant in 2025 for CQF, and that award is pending processing. CQF has also received support from the New York City Department of Cultural Affairs in partnership with the City Council, the JKW Foundation, NYC Pride, and the Terrence McNally Foundation.

4. In January 2025, NQT received an Obie Award for CQF in the "Theatre Grants" category. The prestigious Obie Awards, established in 1955, honor the highest caliber of off-Broadway and off-off Broadway theater to recognize brave work, champion new material, and advance careers in theater.[1]

5. NQT first produced the CQF festival in 2019. CQF has featured works from emerging artists from countries that criminalize homosexuality, such as Syria, Venezuela, Uganda, Kenya, Iraq, China, Pakistan, Tanzania, Egypt, Mexico, India, Lebanon, and Poland. The plays are accompanied by talkback discussions facilitated by the playwrights, human rights advocates, and other subject matter experts.

6. CQF is devoted to freedom of expression and to fighting censorship and criminalization of sexuality and gender identity in other countries. It is meant to be a beacon for the queer community here and abroad, by affirming the equal dignity of people to be who they are, without being compelled to adhere to traditional heterosexual stereotypes.

7. The plays featured in the festival are chosen by a curatorial committee of prior CQF playwrights. Supporting trans writers and trans themes has always been a part of the festival, including in the years that it received NEA funding. In 2023, the festival featured one play about intersex identity. In 2024, two plays were written by transgender writers and about trans identity.

---

[1] https://www.obieawards.com/about.

For 2025, all three playwrights identify as nonbinary or gender queer, and one play has nonbinary characters.

8.     NQT intends to apply for funding from the NEA's Grants for Arts Projects in the March 2025 cycle to support CQF 2026, the eighth annual CQF. The NEA funds would be used for artist and production expenses.

9.     We intend to apply for the March 2025 cycle and not the July 2025 cycle so that we can receive the grant notification in December, which is also when we pass NQT's budget. Because we operate on a calendar year, receiving the grant notification in December gives us six months to plan, budget, and fundraise for CQF 2026. If we were to wait until the July 2025 cycle, that would force us to wait until April 2026 for the grant notification, leaving us with only two months before CQF 2026, which is not enough time for the necessary planning.

10.    The NEA's Grants for Arts Projects application has two parts. Part 1 is submitted through Grants.gov and collects basic information about an organization. For the upcoming application cycle, Part 1 is due March 11, 2025. Part 2 of the application is submitted through the NEA's applicant portal, and requires information about the organization, its history and budget, and information about the project. Part 2 is due March 24, 2025. Both parts must be submitted online.

11.    In order to submit Parts 1 and 2 of the application, we must submit a certification that we agree to an Assurance of Compliance. For the March 2025 cycle, NEA amended the Assurance of Compliance to include a new requirement, which states that "[t]he applicant understands that federal funds shall not be used to promote gender ideology, pursuant to Executive Order No. 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government."

12. An applicant agrees to the certification by checking a box labeled "I agree." There is no other option for the certification. Parts 1 and 2 of the application cannot be submitted without this box checked. A screenshot of this portion of Part 1 is attached as Exhibit A to this declaration.

13. The new Assurance of Compliance also states that the NEA "may conduct a review of your organization to ensure that the applicant is in compliance with these statutes, regulations, and executive orders. If the NEA determines that a recipient has failed to comply with any of these statutes, regulations, or executive orders, it may suspend or terminate the award, and/or recover the funds. The applicant's assurance of compliance is subject to judicial enforcement."

14. While it is clear that the new restriction is aimed at suppressing speech that affirms transgender, queer and nonbinary identity, the restriction remains unclear in substantial respects, forcing us to guess as to what if anything we could do that would avoid its open-ended prohibition. For example, it is not clear whether "promoting" what the government deems to be "gender ideology" includes merely working with actors, playwrights, and other artists who identify as trans, nonbinary, or queer, regardless of the content of the art they produce. It is also unclear whether the mere existence of a trans, nonbinary, or queer character in a piece constitutes "promoting" what the government deems to be "gender ideology." We fear that NQT's very mission as an organization dedicated to celebrating LGBTQ+ artists might also run afoul of the "gender ideology" restriction.

15. We believe that we have the right, as artists, to apply for NEA funding to promote art that meets the merit requirements set out by Congress, whether or not it "promotes" what the government deems to be "gender ideology." And we believe that restriction is invalid as contrary to statute, the Constitution, and the Administrative Procedures Act. The NEA certification and restriction, however, forbid the use of any NEA funding to "promote" what the government deems

to be "gender ideology." And the Executive Order No. 14168 defines "gender ideology" as any effort to affirm that gender is not determined biologically by anatomy at birth. We seek to affirm all gender identities, including transgender, nonbinary, and queer identities. Yet any work that promotes these identities risks violating the NEA restriction on using federal funding to "promote" what the government deems to be "gender ideology." We have to agree to this requirement in order to submit an application. But we believe that condition is invalid and that it is our right, under the First Amendment, not to be so restricted.

16. In the absence of this funding restriction, we would seek NEA funding, as we have received in the past, to support CQF 2026, which is expressly intended to support and celebrate artists who explore LGBTQ+ stories, including work that expressly affirms the equal dignity and genuine experience of trans artists and explores and celebrates stories of and about transgender people that affirm their identity, and rejects the notion that people's identities are determined by their biological anatomy at birth. Affirming LGBTQ+ rights is at the heart of everything we do and our mission; it is the reason for existing as an organization. We stand by our values.

17. Only because one cannot register to apply for NEA funding without checking the box agreeing to the certification in the application, we intend to check that box. But we will simultaneously make clear in writing on the application that we are not agreeing to the "gender ideology" restriction because we believe it is legally invalid, and we are seeking judicial relief to declare it invalid, enjoin its application, and allow our application to be considered on equal terms with all other applications in the March 2025 cycle.

18. We seek injunctive relief invalidating the "gender ideology" restriction so that we are not rendered ineligible from competing for NEA funding because of the viewpoints our NEA-funded work will express.

19. We also intend to apply for NEA funding in the future, as we have consistently done in the past, to support our work affirming transgender, queer, and nonbinary identities. We therefore seek a permanent injunction against enforcement of the provision and a declaration that it shall be set aside as contrary to law and arbitrary and capricious under the APA. Without this relief, our right to compete equally for funding for work of artistic merit will be denied.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 5, 2025.

Adam Odsess-Rubin

# EXHIBIT A

Case 1:25-cv-00079-WES-PAS   Document 2-4   Filed 03/06/25   Page 8 of 9 PageID #: 169

