**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| RHODE ISLAND LATINO ARTS, NATIONAL QUEER THEATER, THE THEATER OFFENSIVE, and THEATRE COMMUNICATIONS GROUP, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> NATIONAL ENDOWMENT FOR THE ARTS, and MARY ANNE CARTER, in her official capacity as Acting Secretary of the National Endowment for the Arts, <br><br> *Defendants*. | Case No. 25-cv-79-WES-PAS |

<u>**DECLARATION OF EMILYA CACHAPERO**</u>

I, Emilya Cachapero, declare as follows:

1.      My name is Emilya Cachapero. I am the Co-Executive Director: National and Global Programming of Theatre Communications Group ("TCG"). I reviewed this with LaTeshia Ellerson, who is the Co-Executive Director: National Engagement of TCG, and Alisha Tonsic, who is the Co-Executive Director: National Operations and Business Development of TCG. The facts set forth in this declaration are based on our personal knowledge and reflect our collective views.

2.      TCG has a nationwide membership, with members located in 48 states across the country. Rhode Island Latino Arts ("RILA"), National Queer Theater, and The Theatre Offensive are all members of TCG.

1

3.　　　　We continue to hear from members that are applying to the NEA's Grants for Arts Projects ("GAP") during the March 2025 cycle with projects that support artistic expression by and about transgender, queer, and nonbinary artists. Some of these members, including RILA, will change their applications depending on whether it is clear that the NEA will not refuse to fund any projects that appear to "promote" what the government deems to be "gender ideology" in the March 2025 grant cycle.

4.　　　　Other TCG members have submitted Part 1 of their GAP applications but will either change the scope of their project or not submit Part 2 on April 7 because of the "gender ideology" prohibition, based on whether this Court enjoins the "gender ideology" prohibition as being part of the selection criteria for funding grant awards before the April 7 deadline.

5.　　　　The declaration from Ann Eilers dated March 7, 2025, did not provide relief for these members. Although the declaration removed the certification requirement from the grant application, it did not remove the prohibition on any project that appears to "promote gender ideology" from receiving funding. Absent relief, some TCG members will still not submit applications for their desired projects.

6.　　　　The memo from Mary Anne Carter dated March 17, 2025, also did not provide relief for these members. The Carter memo states that the NEA will not implement EO 14168 "unless and until such a time that the agency's process of deliberating and considering this EO has been completed," and that the "new consideration and evaluation process will complete by April 16, 2025 and the agency will implement and make public the final decision resulting from that process by April 30, 2025." It is therefore clear that any implementation of EO 14168 will be imposed on the March 2025 round of applications, even though the governing rules will not be made clear to applicants before the application is due.

7.      Because the EO that the NEA is deliberating over states that "[f]ederal funds shall not be used to promote gender ideology" and that "[e]ach agency shall assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology," our members continue to fear that the NEA will reimpose the same "gender ideology" prohibition that the NEA had put in place when TCG filed suit. In addition, some of our members fear that submitting an application that would later be subject to a "gender ideology" prohibition could invite further scrutiny. Because of that, absent the relief we seek, some of our members are forced to censor themselves with regard to their applications due on April 7. Although the "gender ideology" prohibition may not technically be in place when they submit their applications, the NEA has reserved the ability—and in no way disclaimed its intention to—reimpose the prohibition by April 30, once it is too late for submissions to be changed.

8.      Moreover, because the NEA has said that it will impose any new rules and prohibitions it comes up with on April 30 on applications that are submitted on April 7, it is very unclear to our members what standards, prohibitions, and preferences will govern applications in this funding cycle. And there will be no opportunity after any new rules, policies, or standards are announced on April 30 for members to adapt their submitted applications.

9.      Putting together an application for an NEA grant takes a great deal of effort, especially for our smaller members that do not have dedicated development offices for writing grant applications. For example, one of our members had to recently lay off its development department, and now it finds itself with limited resources to craft applications for grant funding.

10.     We continue to gather feedback from members (such as during our Theatre Advocacy Week) to understand how the ongoing changes from the NEA have affected their plans to apply, or no longer apply, for NEA funding. We plan to hold more webinars, once we have more clarity on the situation, to help our members navigate the application process.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on March __25__ , 2025.



                                             _____
                                             Emilya Cachapero