**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| RHODE ISLAND LATINO ARTS, *et al.*, <br><br> Plaintiffs, <br><br> *v.* <br><br> NATIONAL ENDOWMENT FOR THE ARTS, *et al.*, <br><br> Defendants. | Civil Action <br> No. 25-cv-79-WES-PAS |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

In creating the National Endowment of the Arts ("NEA") in 1965, Congress provided broad delegation to the NEA's Chair to selectively fund proposed art projects to allow the government to prominently recognize excellent art and to provide government support to encourage, in turn, equal and ideally greater private support. As the Supreme Court has recognized, that process inherently involves valid, content-based assessments. In amending the NEA's authorizing legislation in 1990, Congress expanded the NEA Chair's broad discretion to assess projects and provide government support relative to their proposed content by allowing the Chair to balance artistic concerns with "consideration of general standards of decency and respect for the diverse beliefs and values of the American public." 20 U.S.C. § 954(d)(1); 20 U.S.C. §§ 951, 955(f). The final funding decisions that the NEA's Chair makes under Congress's broad statutory delegation constitutes government speech, precluding Plaintiffs' claims.

The NEA's cross-motion for summary judgment anticipated and refuted most of the arguments Plaintiffs present in their opposition brief challenging predecisional guidance that the NEA issued in April 2025. The NEA responds herein to five arguments that Plaintiffs either introduce or elaborate on in their opposition, none of which supports Plaintiffs' summary-judgment motion. For the reasons presented in the NEA's cross-motion and below, the Court should grant the NEA's motion and deny Plaintiffs'.

1

*First*, Plaintiffs persist in contending that the NEA requires applicants to certify that they will comply with Executive Order 14168. It does not. Plaintiffs ignore the NEA's explicit statements disclaiming that certification requirement. ECF 25-1, ¶¶ 6-7 & Ex. B at 11; *generally* ECF 25. These statements moot this issue. *See, e.g.*, *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 8 (1st Cir. 2021) (quoting and citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 335 (1980)) (affirming dismissal of case as moot given recission of challenged executive action); *A.C.L.U. of Mass. v. U.S. Conf. of Catholic Bishops*, 705 F.3d 44, 52-53 (1st Cir. 2013) ("[I]f events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case.") (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003)).

Plaintiffs cite only two statements to contend the NEA has revived a certification requirement. But both already include qualifying language that do no such thing. The first appears at https://www.arts.gov/about/civil-rights-office/applicants-recipients-of-federal-financial-assistance/assurance-of-compliance and reads (emphasis added), "The applicant will comply with all **applicable** Executive Orders while the award is being administered. Executive orders are posted at whitehouse.gov/presidential-actions." The second statement appears at https://www.arts.gov/grants/manage-your-award/some-of-your-responsibilities-as-a-federal-award-recipient and reads in part (emphasis added):

> In accepting a National Endowment for the Arts award, your organization assumes legal, financial, administrative, and programmatic responsibility for administering the award in accordance with any provisions included in the award; the statutes, regulations, and Executive Orders **governing** Federal financial assistance awards; and the relevant General Terms and Conditions.

To identify which EOs apply or govern, grant applicants can consult the NEA's Legal Requirements and Assurance of Compliance webpage, which (a) states that "compliance with EO 14168 is governed exclusively by the NEA's predecisional guidance concerning that EO, and not by the terms of these Assurances," ECF 25-1, Ex. B at 11; and (b) links to that guidance, ECF 33-1 ¶ 5, which states, **three times**, that no NEA applicant must certify compliance with that EO, ECF 17-1 at 1, 6, 8. These specific statements control, not the general ones Plaintiffs

cite. *See, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general. . . ."). Even as this issue is moot, the NEA has added language to both statements from its Legal Requirements and Assurance of Compliance webpage linked to the NEA's predecisional guidance: "However, all compliance with EO 14168 is governed exclusively by the NEA's predecisional guidance concerning that EO . . . ." ECF 33-1 & Exs. A & B.

Plaintiffs assert the Court should still assess this moot issue by speculating that the NEA could "reinstate the certification at issue." ECF 28 at 17 n.15. Such speculation cannot satisfy the voluntary-cessation doctrine, which requires "a reasonable expectation that the challenged conduct will be repeated." *Lowe v. Gagné-Holmes*, 126 F.4th 747, 756 (1st Cir. 2025). Otherwise, "no suit against the government would ever be moot." *Boston Bit Labs, Inc.*, 11 F.4th at 10; *see also Lowe*, 126 F.4th at 758 ("Nor does the fact that the defendant state health officials have the authority to promulgate regulations as to future events negate mootness."); *Calvary Chapel of Bangor v. Mills*, 52 F.4th 40, 49 (1st Cir. 2022) (rejecting exception to mootness merely because governor retained authority to reinstate contested restrictions).

***Second***, the Supreme Court's decision in *Finley v. National Endowment for the Arts*, 524 U.S. 569 (1998), does not foreclose the NEA's government-speech arguments, contrary to Plaintiffs' repeated contentions. ECF 28 at 3-4. In *Finley*, the NEA did not claim that its grantmaking decisions were government speech. *E.g.*, Pet'rs Br., *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998) (No. 97-371), 1998 WL 11935, at *29 (Jan. 9, 1998).[1] *Finley*, thus, cannot foreclose an argument never presented to the Court. Regardless, Plaintiffs sidestep that, since *Finley*, the law has changed. Courts considering government-speech arguments—from the Supreme Court to the federal appellate and district courts—have not considered *Finley* an obstacle they

---

[1] The NEA's presentation here concerning its authorizing statute and the 1990 Amendments "would have been relevant in *Finley*," Plaintiffs argue, "yet the Court concluded that NEA-funded art is private speech." ECF 28 at 5 n.3. Plaintiffs concede the accuracy of that presentation, and by framing their argument in the subjunctive further concede that the government did not make these arguments to the *Finley* Court.

must explain away because it complicated or otherwise "foreclosed" government-speech arguments. There are three reasons why.

The first is that the government-speech doctrine has drawn some of its strength from *Finley*. *E.g.*, *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009) ("A government entity has the right to . . . to select the views that it wants to express[.]") (citing 524 U.S. at 598; cleaned up). The second reason is that the government-speech doctrine presents a threshold, constitutional-avoidance issue that litigants, such as the Plaintiffs, must first overcome to establish that the First Amendment, which does not apply to government speech, could even apply. Because *Finley* says nothing about that threshold analysis,[2] it presents no obstacle to this Court from applying here the test announced in *Summum* and re-affirmed in three subsequent Supreme Court cases. *See* ECF 24 at 17. The third reason is that the courts have considered *Finley*'s statements about viewpoint discrimination just as the NEA has, correctly, as *dicta*. If that were not so, no court could reach the conclusion that every government-patron-of-the-arts case since *Summum* has: that the speech was the government's and, therefore, the government had every right to select which viewpoints to favor or disfavor. ECF 24 at 27.

***Third***, to try to avoid application of the government-speech doctrine, Plaintiffs again try to reframe the relevant speech as art that the NEA funds, not NEA funding, because the NEA's predecisional guidance "does not restrict what the *government* can say when it decides who to fund; instead, it restricts the viewpoint expressed *by the funding recipient*." ECF 28 at 6. There are four problems with this argument. (1) Plaintiffs cite no authority to support it, and it is untethered to the Supreme Court's government-speech framework. (2) It is not clear why this point could matter except for Plaintiffs' vain attempt to revive a certification requirement that does not apply. (3) The argument proves too much. In all government speech cases, private litigants

---

[2]    Plaintiffs contend that *Finley* did not reject "Plaintiffs' argument that [NEA grantmaking] is a nonpublic forum." ECF 28 at 4 n.2 (citing *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 95 (1st Cir. 2004)). That is true, but only because *Finley* did not reach that issue. *Finley* refers to nonpublic fora twice, only in a footnote in which dissenting Justic Souter disclaimed that he was undertaking any forum analysis. *Finley*, 524 U.S. at 615 n.10.

always can recharacterize the speech in dispute as their own. The recharacterization here provides no reason to refocus the Court's analysis on Plaintiffs' speech from the NEA's money and recognition, which is the only thing that could make their art "NEA funded." Only the NEA's speech matters, as it is the potential loss of NEA money and recognition that Plaintiffs hope to remedy here. (4) Plaintiffs' reframing also scrupulously avoids engaging with the purpose of the NEA's authorizing statute, as amended in 1990; Congress's delegation of a necessarily content-based art-funding program to a single official appointed by the President and confirmed by the Senate, the NEA's Chair; and the undisputed message the government conveys when it selects and approves of selected projects for funding. 20 U.S.C. §§ 951, 954(d)(1), 955(f).

*Fourth*, Plaintiffs then engage in several pages of caselaw analysis to try to suggest there is no government speech at issue, rather than the holistic, factual analysis *Summum* and its progeny require. The Court should reject all of Plaintiffs' arguments. Plaintiffs first invent a government-subsidy exception to the government-speech doctrine. ECF 28 at 7 & n.4. But the propositions from their pre-*Summum* cases would apply, if at all, only *after* undertaking the government-speech analysis that *Summum* announced and that the Supreme Court repeated in three subsequent cases. That analysis does not include any forum analysis, and so Plaintiffs are wrong to suggest that a decision adopting the NEA's government-speech arguments "would require a re-writing of forum doctrine." ECF 28 at 9. Plaintiffs also fail to show that the analysis of the tradition of the government's expression and the public's perception of and government control over its message inevitably leads to another result they fear: immunization of *all* such subsidy programs from First Amendment scrutiny. *Id*. NEA grantmaking turns on a government official's discretion in selecting on proposed projects based on their content while balancing all of the statutory values Congress set forth. *E.g.*, 20 U.S.C. §§ 951, 954(d)(1), 955(f).

Plaintiffs' next set of cases (as those cited in their opening brief) lack any discussion of the government-speech doctrine, or they assess programs that—unlike NEA grantmaking— lacked substantial elements necessary to establish that the relevant speech was the government's.

ECF 28 at 9-11.[3] Plaintiffs finally try to distinguish the patron-of-the-arts authorities that the NEA has cited. But the thrust of their effort is to convert factual distinctions between those cases and this one into legal propositions—that the government must either own the art or display it in a government building or fund it more substantially, etc., ECF 28 at 12-13 & n.9—none of which the "holistic" government-speech analysis requires.

Plaintiffs otherwise do not contest NEA's factual contentions relevant to the analytical framework of the government-speech doctrine: (1) the 60-year tradition of NEA's grantmaking, its role in incentivizing private investment in art, and the government message to advance that purpose; (2) the public's perception (and, notably, their own) that the NEA's seal of approval is metaphorically and actually only the government's speech, which was the salient factor motivating Congress's 1990 Amendments; and (3) that the NEA alone controls its message—which grants might win and which might lose—and that the courts have consistently held that such power of selection is sufficient to establish government control when the government acts as a patron of the arts.

***Finally***, this Court lacks jurisdiction to decide Plaintiffs' non-constitutional claims under the Administrative Procedure Act ("APA") because the NEA's predecisional guidance is neither final agency action nor ripe for review, contrary to Plaintiffs' contentions. That guidance only

---

[3]    *E.g.*,

- *Hopper v. City of Pasco*, 241 F.3d 1067 (9th Cir. 2001) (quoted and cited in ECF 28 at 10-11) (government-speech doctrine not invoked); *id*. at 1070-72 (noting City commissioned private organization to manage a new program "without any pre-screening process" by that organization or the City and with "no selection process");

- *Freedom from Religion Found., Inc. v. Abbott*, No. A–16–CA–00233–SS, 2016 WL 7388401 (W.D. Tex. Dec. 20, 2016) (quoted in ECF 28 at 10), *rev'd and vacated on other grounds*, 955 F.3d 417 (5th Cir. 2020); *id*. at *4-*5 (rejecting government-speech doctrine given lack of evidence of government message or tradition of conveying one and disclaimers that speech was "endorsed by the state");

- *Esperanza Peace & Just. Ctr. v. City of San Antonio*, 316 F. Supp. 2d 433 (W.D. Tex. 2001) (quoted and cited in ECF 28 at 10) (government-speech doctrine not invoked); *id*. at 439 ("The City has neither created nor operated the arts funding program to convey a specific message of its own; rather, the City created an arts funding program because it recognized that art was important for matters of quality of life and economic development.").

6

forecasts what the NEA Chair *might* do and has not been applied to any NEA grant applicant (including Plaintiffs).[4] Again, rather than focus on the NEA's conduct, Plaintiffs try to conjure final agency acting by focusing on their own conduct, ECF 28 at 15, which is legally irrelevant. *See, e.g.*, *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 810 (2003) (concluding that claims were not ripe because of absence of effect on primary conduct). The cases on which Plaintiffs rely also fail to show the NEA's predecisional guidance—and its possible, merely contingent effect on any NEA applicant—is final agency action. The first substantially involved (in that court's view) the termination of federal grants and unqualified policy commands. *Am. Pub. Health Ass'n v. Nat'l Insts. Of Health*, Nos. 25-10787-WGY, 24-10814-WGY, 2025 WL 1822487, at *14 (D. Mass. July 2, 2025). The second targeted policy statement similarly involved (again, in that court's view) unqualified orders to terminate federal employees. *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1358477, at *21 (N.D. Cal. May 9, 2025).

Here, no grants have been made to any GAP applicant, much less terminated. It is undisputed that the challenged NEA policy does not disqualify any applicant and might result in only some applicants not receiving grants when weighed with other factors consistent with the NEA's authorizing statute. And whether any Plaintiff might not receive a grant—and why—will not be known for months. These undisputed facts underscore why the non-constitutional APA claims that Plaintiffs present are not ripe and should be dismissed. *See also Nat'l Park Hospitality Ass'n*, 538 U.S. at 811 (concluding that uncertainty applicants confront in preparing requests for

---

[4]    Plaintiffs misperceive the NEA's citation to *Food & Drug Administration v. Wages and White Lion Investments*, 145 S. Ct. 898 (2025). ECF 28 n.13. Plaintiffs demanded extra-record discovery because the NEA's predecisional guidance, they contended, "does not actually explain how the NEA will implement EO 14168." ECF 18 at 1. The NEA, opposing that discovery, contended that the "how" could not be sufficiently predicted as the NEA Chair—the sole decisionmaker on any NEA grant application, as prescribed by Congress, 20 U.S.C. §§ 954(d)(1), 955(f)—would work out the "how" in adjudication, *i.e.*, when making individual grant applications, as *Wages and White Lion Investment* permits. Whether that not-yet-worked-out "how" actually has any adverse impact on anyone will depend on an administrative record that does not yet exist. As a result, the "finality" necessary to justify APA review has not occurred. And the use of the word "final" in a filename (to distinguish the final draft from its internal predecessors) cannot change that fact, even as Plaintiffs wish it might. ECF 28 at 15 n.12.

government benefits about how agency would apply contested policy was not sufficient hardship to make claims ripe).

## CONCLUSION

For the preceding reasons as well as those stated in the NEA's opening summary-judgment brief (ECF 24), the NEA asks the Court to enter final judgment for the NEA on all of Plaintiffs claims and to deny Plaintiffs' motion for summary judgment.

Dated: August 8, 2025                    Respectfully submitted,

                                         NATIONAL ENDOWMENT FOR THE ARTS;
                                         MARY ANNE CARTER, in her official capac-
                                         ity as Acting Chair of the National Endowment
                                         for the Arts,

                                         By their Attorneys

                                         SARA MIRON BLOOM
                                         Acting United States Attorney

                                         /s/ Kevin Bolan
                                         KEVIN BOLAN
                                         Assistant United States Attorney
                                         One Financial Plaza, 17th Floor
                                         Providence, RI 02903
                                         (401) 709-5000
                                         kevin.bolan@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on August 8, 2025, I filed this document and its attachments through the Court's ECF system, thereby electronically serving all parties of record in this action.

                                         /s/ Kevin Bolan
                                         KEVIN BOLAN
                                         Assistant United States Attorney